## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **TERESA L. CHANDLER,** | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:16cv00015 |
| | ) | |
| **NANCY A. BERRYHILL,**[1] | ) | **REPORT AND RECOMMENDATION** |
| **Acting Commissioner of** | ) | |
| **Social Security,** | ) | BY: PAMELA MEADE SARGENT |
| Defendant | ) | United States Magistrate Judge |

### I. Background and Standard of Review

Plaintiff, Teresa L. Chandler, ("Chandler"), filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), determining that she was not eligible for disability insurance benefits, ("DIB"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. § 423 (West 2011). Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g). This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Berryhill is substituted for Carolyn W. Colvin, the previous Acting Commissioner of Social Security.

"evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "'substantial evidence.'"" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Chandler protectively filed an application for DIB on January 26, 2012, alleging disability as of December 10, 2011, due to anxiety, depression, panic attacks, residuals from a motor vehicle accident, acid reflux and allergies. (Record, ("R."), at 207-08, 218, 221, 228.) The claim was denied initially and on reconsideration. (R. at 133-35, 139-43.) Chandler then requested a hearing before an administrative law judge, ("ALJ"). (R. at 145.) A video hearing was held on September 4, 2014, at which Chandler was represented by counsel. (R. at 77-113.)

By decision dated November 14, 2014, the ALJ denied Chandler's claim. (R. at 58-72.) The ALJ found that Chandler met the nondisability insured status requirements of the Act for DIB purposes through December 31, 2016. (R. at 60.) The ALJ also found that Chandler had not engaged in substantial gainful activity since December 10, 2011, her alleged onset date.[2] (R. at 60.) The ALJ found that the medical evidence established that Chandler suffered from severe impairments, namely residual effects of a 2006 left elbow dislocation with multiple fractures;

_____

[2] Therefore, Chandler must show that she became disabled between December 10, 2011, the alleged onset date, and November 14, 2014, the date of the ALJ's decision, in order to be entitled to DIB benefits.

major depressive disorder; generalized anxiety disorder; panic disorder and borderline intellectual functioning, but she found that Chandler did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 60-61.) The ALJ found that Chandler had the residual functional capacity to perform a limited range of medium work.[3] (R. at 63.) The ALJ also found that Chandler was able to understand, remember and carry out simple instructions in repetitive and unskilled work; that she could have no interaction with the general public; and no more than occasional interaction with co-workers and supervisors. (R. at 63.) The ALJ further found that Chandler was able to respond appropriately to supervision, co-workers and usual work situations. (R. at 63.) The ALJ found that Chandler was unable to perform her past relevant work. (R. at 70.) Based on Chandler's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ also found that other jobs existed in significant numbers in the national economy that Chandler could perform, including jobs as an assembler, a hand packager and a stock clerk. (R. at 70-71.) Thus, the ALJ found that Chandler was not under a disability as defined by the Act and was not eligible for DIB benefits. (R. at 71-72.) *See* 20 C.F.R. § 404.1520(g) (2016).

After the ALJ issued her decision, Chandler pursued her administrative appeals, (R. at 45-48), but the Appeals Council denied her request for review. (R. at 1-6.) Chandler then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. §

---

[3] Medium work involves lifting items weighing up to 50 pounds at a time with frequent lifting or carrying of items weighing up to 25 pounds. If an individual can do medium work, she also can do sedentary and light work. *See* 20 C.F.R. § 404.1567(c) (2016).

404.981 (2016). The case is before this court on Chandler's motion for summary judgment filed December 13, 2016, and the Commissioner's motion for summary judgment filed February 13, 2017.

## II. Facts[4]

Chandler was born in 1967, (R. at 82, 207), which classifies her as a "younger person" under 20 C.F.R. § 404.1563(c). She has a high school education and past relevant work as a customer service representative at a call center, a bank teller and a cashier. (R. at 82-85, 229.) Chandler was terminated from New People's Bank on December 10, 2011. (R. at 80.) She stated that she was terminated from the bank teller position due to having "a lot of teller overages and shortages." (R. at 84-85.) Chandler returned to work at Sykes, a call center, on February 18, 2013, and was terminated on September 30, 2013, due to providing incorrect information to callers. (R. at 80, 83.) She stated that the job was stressful, which caused her to have panic attacks. (R. at 83.) Chandler stated that she had not been hospitalized or received emergency room treatment for her problems with anxiety. (R. at 87.) Chandler stated that, while working as a customer service representative, she experienced panic attacks daily. (R. at 89.) She stated that, during her breaks, she was able to calm herself down and return to work by using techniques taught to her by her medical providers. (R. at 89-90.) Chandler stated

---

[4] Chandler does not challenge the ALJ's finding with respect to her alleged physical impairments. Therefore, the discussion of the medical evidence will be limited to those records pertaining to Chandler's mental health. Further, the undersigned's consideration of medical records is limited to those pertinent to the relevant time period of December 10, 2011, the alleged onset date, through November 14, 2014, the date of the ALJ's decision. To the extent that medical records pertaining to dates not pertinent to the relevant time period are contained herein, it is for clarity of the record.

that, since being unemployed, she experienced one to two panic attacks a week. (R. at 89.)

Vocational expert, John Newman, also testified at Chandler's hearing. (R. at 104-11.) Newman was asked to consider a hypothetical individual of Chandler's age, education and work experience, who would be limited to repetitive, unskilled, medium work that did not require interaction with the general public and no more than occasional interaction with co-workers and supervisors, who was able to understand, remember and carry out simple instructions and who could respond appropriately to supervision, co-workers and usual work situations. (R. at 105-06.) Newman stated that such an individual could not perform Chandler's past relevant work. (R. at 106.) Newman also stated that there would be other jobs available that existed in significant numbers that such an individual could perform, including jobs as an assembler, a packer and a stock clerk. (R. at 106-07.) Newman stated that there would be no jobs available that the individual could perform should she need to be away from her work station for an hour a day due to anxiety symptoms or who would be absent from work more than two days a month. (R. at 107.)

Newman was asked to consider an individual who had marked impairments in her ability to understand, remember and carry out simple job instructions and to deal with work stress. (R. at 109.) He stated that the Department of Labor's definition of occupational stress was defined as exposure to situations where your life or somebody else's life was at risk; thus, stress was not going to substantially diminish an occupational base given that definition. (R. at 109.) He also stated that an individual who was incapable of understanding, remembering and carrying out simple job instructions or making simple work-related decisions would be unable

to engage in any employment. (R. at 109-10.) Newman further testified that there would be no jobs available should an individual's ability to maintain attention and concentration be limited to two-hour intervals or to the extent that the person could not complete job tasks satisfactorily. (R. at 110.) He stated that there would be no jobs available should the individual be off task more than 10 percent of the workday. (R. at 110-11.)

In rendering her decision, the ALJ reviewed medical records from Wise County Public Schools; Community Physicians; Dr. Andrew Bockner, M.D., a state agency physician; Dr. James D. Moore, Jr., M.D.; Solutions Counseling, LLC; Vada Rose, F.N.P., a family nurse practitioner; Dr. Matthew W. Cusano, M.D.; Dr. Paul R. Kramer, M.D.; Susan G. Myers, L.C.S.W., a licensed clinical social worker; and B. Wayne Lanthorn, Ph.D., a licensed clinical psychologist. Chandler's attorney also submitted medical records from Myers and Norton Community Physician Service to the Appeals Council.[5]

The record shows that Chandler treated with Vada Rose, F.N.P., a family nurse practitioner and Dr. Matthew W. Cusano, M.D.,[6] of Community Physicians from 2008 through 2015. (R. at 13-44, 269-83, 288-314, 406-77, 480-500, 532-40, 550-52.) On July 15, 2008, Chandler reported anxiety and stated that she was

---

[5] Since the Appeals Council considered and incorporated this additional evidence into the record in reaching its decision, (R. at 1-6), this court also must take these new findings into account when determining whether substantial evidence supports the ALJ's findings. *See Wilkins v. Sec'y of Dep't of Health & Human Servs.,* 953 F.2d 93, 96 (4th Cir. 1991).

[6] It appears that Dr. Cusano initially treated Chandler in 2008. Rose began treating Chandler in November 2008. While Dr. Cusano did not actually see Chandler, he signed off on the treatment notes stating that he agreed with the plan of care recommended by Rose. It appears that Dr. Cusano next saw Chandler on one occasion in 2014. (R. at 532-39.)

experiencing what she believed to be post-traumatic stress disorder, ("PTSD"), resulting from her family history of colon cancer. (R. at 472.) Dr. Cusano diagnosed anxiety disorder and PTSD. (R. at 472.) Dr. Cusano recommended counseling, and Chandler refused. (R. at 472.) On August 8, 2008, Chandler complained of anxiety and depression. (R. at 469.) Dr. Cusano diagnosed anxiety disorder and prescribed Lexapro and librium. (R. at 469.) On October 8, 2008, Chandler reported that she could not tolerate Lexapro because it made her sleepy and depressed. (R. at 465-66.) Dr. Cusano discussed with Chandler the increased risk of librium addiction. (R. at 465.) He noted that Chandler was upset with him for continuing to try her on other medications. (R. at 465.)

On May 26, 2009, Chandler reported depression and social anxiety. (R. at 454.) She stated that she did not like to go out in public. (R. at 454.) Rose referred Chandler to counseling and prescribed librium. (R. at 454.) On August 7, 2009, Chandler stated that her anxiety symptoms were worsening. (R. at 452.) She refused counseling and was prescribed Lexapro. (R. at 452.) On September 15, 2009, Chandler reported that she stopped taking Lexapro because it made her feel sad. (R. at 450.) She requested librium for her depression. (R. at 450.) Chandler refused to return to counseling, stating that she did not find it helpful. (R. at 450.) On March 18, 2010, Chandler denied depression, but reported anxiety due to domestic problems. (R. at 448.) On March 30, 2010, Chandler reported that she was excited to be starting a new job and the ability to get to meet people in the public. (R. at 446.) She complained of depression, but was not suicidal. (R. at 446.) On June 16, 2010, Chandler reported that her depression had improved since starting a new job. (R. at 444.)

On January 25, 2011, it was noted that Chandler had depression and anxiety; however, no medications were prescribed. (R. at 281-82.) On December 7, 2011, Chandler reported that she recently got married, that her depression was stable and that she was "very happy." (R. at 269.) On March 23, 2012, Chandler reported that her depression was stable. (R. at 302.) She denied loss of interest or pleasure in activities, an inability to perform normal activities, trouble concentrating, worsened anxiety or memory loss. (R. at 302.) On May 30, 2012, Chandler continued to report depression, but stated that it was "not bad." (R. at 299.)

Chandler repeatedly reported that her depression was stable. (R. at 34, 406, 412, 420, 427, 432, 485, 495, 532.) She repeatedly denied loss of interest or pleasure in activities, an inability to perform normal activities, trouble concentrating, worsened anxiety or memory loss. (R. at 13, 26, 35, 412, 420, 427, 432, 485, 495, 532-33.) It was regularly noted that Chandler's affect and mood were normal. (R. at 18, 30, 39, 409, 415, 422, 434, 489, 498, 537.) In addition, it was noted that Chandler's anxiety and depression were stable. (R. at 409-10, 416, 421, 486-87, 489.) In August 2012, Chandler reported that she had been terminated and was waiting until after her surgery to consider jobs. (R. at 436.)

On August 9, 2013, Chandler reported that she was working at Sykes, which helped her symptoms of anxiety.[7] (R. at 409.) She also reported that she was very excited that her daughter was expecting a baby in June. (R. at 410.) On July 18, 2014, Chandler reported that her depression had worsened due to job termination; however, she noted that it was stable. (R. at 537-38.) Dr. Cusano noted that

---

[7] Chandler continued to report that working helped her symptoms of anxiety. (R. at 486, 499.)

Chandler refused counseling. (R. at 538.)

On September 3, 2014, Rose completed a mental assessment, indicating that Chandler had no limitations on her ability to maintain personal appearance. (R. at 550-52.) She found that Chandler had a satisfactory ability to behave in an emotionally stable manner and to relate predictably in social situations. (R. at 550-51.) She found that Chandler had a seriously limited ability to use judgment and to understand, remember and carry out simple job instructions. (R. at 550-51.) Rose opined that Chandler had no useful ability to follow work rules; to relate to co-workers; to deal with the public; to interact with supervisors; to deal with work stresses; to function independently; to maintain attention and concentration; to understand, remember and carry out complex and detailed instructions; and to demonstrate reliability. (R. at 550-51.) She opined that Chandler would be absent from work more than two days a month. (R. at 552.)

On June 16, 2015, Chandler reported that she felt awkward in public and that her depression had worsened since being terminated from her job. (R. at 14.) Counseling was recommended, but Chandler refused. (R. at 15.)

On March 10, 2011, Dr. James D. Moore, Jr., M.D., saw Chandler for a complete medical examination. (R. at 355-57.) Chandler denied depression. (R. at 356.) Dr. Moore reported that Chandler was alert and oriented; her affect was normal and calm; and no mood disorders were noted. (R. at 357, 365.)

On April 17, 2012, Dr. Paul R. Kramer, M.D., saw Chandler for complaints of an ovarian mass. (R. at 402-04.) Examination was negative for psychiatric

symptoms or memory impairment. (R. at 403.) Chandler was alert and oriented; her cranial nerves were intact; and no gross motor or sensory deficits were noted. (R. at 404.)

On May 30, 2012, Dr. Andrew Bockner, M.D., a state agency physician, noted that Chandler was scheduled for a psychological examination on two different occasions, but she failed to keep the appointments. (R. at 118-19.)

On August 19, 2013, Chandler saw Susan G. Myers, L.C.S.W., a licensed clinical social worker, stating that she experienced symptoms of anxiety since age nine due to violence in the home. (R. at 479.) Myers reported that Chandler's mood was depressed; she had an anxious affect; she had intact orientation and thought process; she experienced no paranoia or delusions; and she had fair insight and judgment. (R. at 479.) Myers diagnosed panic disorder without agoraphobia and severe major depressive affective disorder, recurrent episode. (R. at 479.) She assessed Chandler's then-current Global Assessment of Functioning,[8] ("GAF"), score at 50,[9] with her GAF score being 50 within the past year. (R. at 479.)  On October 25, 2013, Chandler reported anxiety and panic attacks. (R. at 510.) She stated that she had been terminated from her previous two jobs and that she felt like a failure. (R. at 510.) Myers reported that Chandler's mood was depressed; she had an anxious mood; she had intact orientation and thought process; she

---

[8] The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION, ("DSM-IV"), 32 (American Psychiatric Association 1994).

[9] A GAF score of 41-50 indicates that the individual has "[s]erious symptoms ... OR any serious impairment in social, occupational, or school functioning...." DSM-IV at 32.

experienced no paranoia or delusions; and she had limited insight and judgment. (R. at 510.) Myers reported that Chandler continued to be disabled due to a significant history of panic. (R. at 510.)

On April 14, 2014, Chandler reported that driving made her anxious. (R. at 509.) Myers reported that it was difficult for her to opine that Chandler could not work; however, she noted that Chandler was depressed and had difficulty concentrating. (R. at 509.) Myers reported that Chandler's mood was depressed; she had an anxious affect; she had intact orientation and thought process; she experienced no paranoia or delusions; and she had limited insight and judgment. (R. at 509.) On May 14, 2014, Chandler reported that she had a hearing scheduled on her disability case and that she was afraid that she would not be able to answer the questions due to her struggles with putting thoughts into words. (R. at 508.) Myers reported that Chandler's mood was depressed; she had an anxious affect; she had intact orientation and thought process; and she experienced no paranoia or delusions. (R. at 508.)

On July 15, 2014, Myers completed a mental assessment, indicating that Chandler had a limited, but satisfactory, ability to maintain personal appearance. (R. at 528-30.) She found that Chandler had a seriously limited ability to understand, remember and carry out simple job instructions and to demonstrate reliability. (R. at 528-29.) Myers opined that Chandler had no useful ability to follow work rules; to relate to co-workers; to deal with the public; to use judgment; to interact with supervisors; to deal with work stresses; to function independently; to maintain attention and concentration; to understand, remember and carry out complex and detailed instructions; to behave in an emotionally stable manner; and

to relate predictably in social situations. (R. at 528-29.) She opined that Chandler would be absent from work more than two days a month. (R. at 530.)

On August 26, 2014, Myers reported that Chandler's mood was depressed; she had an anxious affect; she had intact orientation and thought process; she experienced no paranoia or delusions; and she had limited insight and judgment. (R. at 542.) On August 28, 2014, Myers completed another mental assessment, indicating that Chandler had a satisfactory ability to maintain personal appearance and to demonstrate reliability. (R. at 546-48.) She found that Chandler had a seriously limited ability to follow work rules; to relate to co-workers; to function independently; to maintain attention and concentration; to understand, remember and carry out simple job instructions; to behave in an emotionally stable manner; and to relate predictably in social situations. (R. at 546-47.) Myers opined that Chandler had no useful ability to deal with the public; to use judgment; to interact with supervisors; to deal with work stresses; and to understand, remember and carry out complex and detailed instructions. (R. at 546-47.) She opined that Chandler would be absent from work more than two days a month. (R. at 548.)

On January 13, 2015, Chandler reported that she worried constantly. (R. at 54.) Myers reported that Chandler's mood was depressed; she had an anxious affect; she had intact orientation and thought process; she experienced no paranoia or delusions; and she had fair insight and judgment. (R. at 54.) On April 22, 2015, Myers reported that Chandler's mood was depressed; she had an anxious affect; she had intact orientation and thought process; she experienced no paranoia or delusions; and she had fair insight and judgment. (R. at 53.) Myers noted that Chandler's symptoms were related to medical issues and to her son's graduation.

(R. at 53.) On May 27, 2015, Chandler reported that she was depressed and had experienced a panic attack. (R. at 52.) Myers reported that Chandler's mood was depressed; she had an anxious affect; she had intact orientation and thought process; she experienced no paranoia or delusions; and she had fair insight and judgment. (R. at 52.) Myers diagnosed panic disorder with agoraphobia and severe major depressive affective disorder, recurrent episode. (R. at 52.)

On July 16, 2015, Myers completed a mental assessment, indicating that Chandler had mild limitations in her ability to maintain personal appearance and to demonstrate reliability. (R. at 9-11.) She opined that Chandler had "marked"[10] limitations in her ability to follow work rules; to interact with supervisors; to function independently; to maintain attention and concentration; to understand, remember and carry out detailed and simple job instructions; and to behave in an emotionally stable manner. (R. at 9-10.) Myers found that Chandler had no useful ability to relate to co-workers; to deal with the public; to use judgment; to deal with work stresses; to understand, remember and carry out complex job instructions; and to relate predictably in social situations. (R. at 9-10.) She opined that Chandler would be absent from work more than two days a month. (R. at 11.)

On May 28, 2014, B. Wayne Lanthorn, Ph.D., a licensed clinical psychologist, evaluated Chandler at the request of Chandler's attorney. (R. at 512-23.) Chandler reported that she attended church and shopped, but was uncomfortable in such settings. (R. at 515-16.) She stated that she socialized almost exclusively with family members. (R. at 516.) The Wechsler Adult

---

[10] Marked is defined as a substantial loss in the ability to effectively function – resulting in unsatisfactory work performance. (R. at 9.)

-13-

Intelligence Scale - Fourth Edition, ("WAIS-IV"), was administered, and Chandler obtained a full-scale IQ score of 68. (R. at 513.) Lanthorn reported that Chandler displayed no signs or indicators of ongoing psychotic processes, delusional thinking or hallucinations. (R. at 516.) Chandler made good eye contact and showed no indicators of a thought disorder, and her thought processes were lucid and clear. (R. at 516.) Lanthorn noted that Chandler's affect and mood were mixed. (R. at 521.) Lanthorn diagnosed panic disorder without agoraphobia; generalized anxiety disorder; and major depressive disorder, recurrent, moderate. (R. at 521-22.) He found that Chandler was competent to manage her own funds. (R. at 522.) Chandler was strongly encouraged to continue to be seen for regular psychotherapy. (R. at 522.)

Lanthorn also completed a mental assessment, indicating that Chandler had a limited, but satisfactory, ability to understand, remember and carry out simple job instructions. (R. at 524-26.) He opined that Chandler had a seriously limited ability to follow work rules; to interact with supervisors; to function independently; to maintain attention and concentration; to understand, remember and carry out detailed instructions; to maintain personal appearance; and to behave in an emotionally stable manner. (R. at 524-25.) Lanthorn opined that Chandler had no useful ability to relate to co-workers; to deal with the public; to use judgment; to deal with work stresses; to understand, remember and carry out complex job instructions; to relate predictably in social situations; and to demonstrate reliability. (R. at 524-25.) He found that Chandler would be absent from work more than two days a month. (R. at 526.)

*III. Analysis*

The Commissioner uses a five-step process in evaluating DIB claims. *See* 20 C.F.R. § 404.1520 (2016); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to her past relevant work; and 5) if not, whether she can perform other work. *See* 20 C.F.R. § 404.1520. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. § 404.1520(a) (2016).

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. The court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided her decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained her findings and her rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

It is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. *See Hays*, 907 F.2d at 1456; *Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir. 1975). Furthermore, while an ALJ may not reject medical evidence for no reason or for

the wrong reason, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. § 404.1527(c), if she sufficiently explains her rationale and if the record supports her findings.

Chandler argues that the ALJ erred by improperly determining her mental residual functional capacity. (Plaintiff's Memorandum In Support Of Her Motion For Summary Judgment, ("Plaintiff's Brief"), at 4-6.) Chandler further argues that the ALJ erred by failing to give full consideration to the findings of Lanthorn. (Plaintiff's Brief at 6-7.) Based on my review of the record, I find these arguments unpersuasive.

In December 2011, Chandler reported to Rose that she recently got married, that her depression was stable and that she was "very happy." (R. at 269.) Chandler repeatedly reported that her depression was stable. (R. at 34, 406, 412, 420, 427, 432, 485, 495, 532.) She repeatedly denied loss of interest or pleasure in activities; an inability to perform normal activities; trouble concentrating; worsened anxiety; or memory loss. (R. at 13, 26, 35, 412, 420, 427, 432, 485, 495, 532-33.) Rose regularly noted that Chandler's affect and mood were normal. (R. at 18, 30, 39, 409, 415, 422, 434, 489, 498, 537.) In addition, it was noted that Chandler's anxiety and depression were stable. (R. at 409-10, 416, 421, 486-87, 489.) Chandler was never hospitalized for anxiety nor did she seek emergency room treatment for a panic attack. (R. at 87.) In April 2012, Dr. Kramer reported that Chandler was alert and oriented; she had no psychiatric symptoms or memory impairment. (R. at 403-04.) In August 2012, Chandler reported to Rose that she

planned to consider jobs after her surgery. (R. at 436.) In August 2013, Chandler reported that working helped her symptoms of anxiety. (R. at 409.) Chandler reported increased anxiety and depression following termination from her job; however, she reported that her depression was stable. (R. at 14, 537-38.)

The ALJ also considered Myers's treatment records. (R. at 67.) As the ALJ noted, while these records indicated Chandler's complaints of anxiety, panic and depression, they showed a level of stability with minimal treatment, as well as consistently mild positive findings on the mental status examinations, such as depressed mood and anxious affect, but otherwise full orientation, intact thought processes, no evidence of delusions or paranoia and fair to limited judgment and insight. (R. at 52-54, 479, 508-10, 542.) In April 2014, Myers reported that it was difficult for her to opine that Chandler could not work; however, she noted that Chandler was depressed and had difficulty concentrating. (R. at 509.) Myers noted that Chandler's symptoms were related to medical issues and to her son's graduation. (R. at 53.)

Additionally, as the ALJ noted, Chandler alleged that her anxiety and panic symptoms dated back to her childhood; however, she was able to engage in significant work activity for a number of years and maintain a number of interpersonal relationships. (R. at 68.) *See Craig v. Chater*, 76 F.3d 585, 596 n.7 (4th Cir. 1996) (noting that because the claimant worked with the same impairments she alleged rendered her unable to work, "she cannot now, as a matter of law, be found disabled without a claim of significant deterioration of her condition"). The ALJ also took note that Chandler worked as a customer service

representative for Sykes, a semi-skilled job, between February 2013 and September 2013, which was during the relevant period. (R. at 67, 69, 82-83, 98, 105, 209-10.) Although the ALJ found this work activity not to be substantial gainful activity, it was still appropriate evidence for the ALJ to consider. *See* S.S.R. 96-8p, SOCIAL SECURITY REPORTING SERVICE, Rulings 2013 Supplementary Pamphlet (West 2013) (citing "evidence from attempts to work" as the type of relevant evidence that an adjudicator can consider in assessing a claimant's residual functional capacity). As the ALJ noted, while Chandler reported significant problems with job performance that eventually led to her termination, she was able to go to work for over six months, including attending a three-week training class. (R. at 69, 82-83, 98-101.) It also showed that Chandler remained able to manage the social interactions required in a workplace, even if on a limited basis, and that she could handle the stress associated with a daily work routine, even if she could not perform the semi-skilled tasks. (R. at 69.) In fact, Chandler reported to Rose in April 2013 that working at Sykes helped her anxiety. (R. at 413.) Based on this, I find that substantial evidence exists to support the ALJ's finding with regard to Chandler's mental residual functional capacity.

Chandler also argues that the ALJ failed to give full consideration to Lanthorn's opinion. (Plaintiff's Brief at 6-7.) The ALJ noted that she was giving some weight to Lanthorn's opinion. (R. at 69.) The ALJ recognized that Lanthorn reported that Chandler had a mixed mood and affect, that she functioned in the borderline range intellectually and that she exhibited the signs and symptoms associated with panic disorder without agoraphobia, generalized anxiety and moderate major depressive disorder. (R. at 66, 69, 521-22.) Lanthorn also reported that Chandler was cooperative and affable during her psychological evaluation

with good eye contact and clear speech, had lucid and clear thought processes, no evidence of a thought disorder and displayed no evidence of psychosis. (R. at 69, 516.) In terms of attention and concentration, Chandler also was able to recall four out of five words presented to her 10 minutes previously, give the correct interpretation to two out of three commonly used adages and, although she was unable to spell the word "world" backwards, could do so forwards. (R. at 516.) With regard to Lanthorn's more severe limitations assessed, the ALJ found them to be based largely on Chandler's self-reported symptoms and limitations rather than on objective clinical findings and observations. (R. at 69, 524-25.)

The ALJ gave little weight to the opinions of Rose and Myers because they were not an acceptable medical source. (R. at 69.) In addition, the ALJ found the severe limitations assessed to be based largely on Chandler's self-reported limitations and symptoms, rather than clinical findings. (R. at 69.) As noted above, Chandler repeatedly reported that her depression was stable. (R. at 34, 406, 412, 420, 427, 432, 485, 495, 532.) Chandler repeatedly denied loss of interest or pleasure in activities, an inability to perform normal activities, trouble concentrating, worsened anxiety or memory loss. (R. at 13, 26, 35, 412, 420, 427, 432, 485, 495, 532-33.) Rose regularly noted that Chandler's affect and mood were normal. (R. at 18, 30, 39, 409, 415, 422, 434, 489, 498, 537.) In addition, Myers's treatment notes showed consistently mild positive findings on the mental status examinations, such as depressed mood and anxious affect, but otherwise full orientation; intact thought processes; no evidence of delusions or paranoia; and fair to limited judgment and insight. (R. at 52-54, 479, 508-10, 542.) In April 2014, Myers reported that it was difficult for her to opine that Chandler could not work;

however, she noted that Chandler was depressed and had difficulty concentrating. (R. at 509.)

Based on this, I find that the ALJ properly weighed the medical evidence and that substantial evidence exists to support her finding as to Chandler's mental residual functional capacity.

## PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. Substantial evidence exists in the record to support the ALJ's weighing of the medical evidence;

2. Substantial evidence exists in the record to support the ALJ's finding with regard to Chandler's mental residual functional capacity; and

3. Substantial evidence exists in the record to support the Commissioner's finding that Chandler was not disabled under the Act and was not entitled to DIB benefits.

## RECOMMENDED DISPOSITION

The undersigned recommends that the court deny Chandler's motion for summary judgment, grant the Commissioner's motion for summary judgment and affirm the Commissioner's finding that Chandler was not disabled.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C.A. § 636(b)(1)(C) (West 2006 & Supp. 2016):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED:    June 12, 2017.

s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE